## Exhibit A

AFFIDAVIT

I, Scott Moses, being first duly sworn, depose and state:

1.    I am currently employed as a Technical Positioned State Trooper with the Kansas Highway Patrol (KHP) and have been so employed for over 9 years. I served 5 years as the Kansas Highway Patrol Troop B Investigator, assigned to the Topeka Police Department Criminal Investigations Bureau. My current assignment with the KHP is as a Task Force Officer with DEA, having been so employed as a TFO since August 2023.

2.    In addition to initial training, I have received numerous courses of instruction from the KHP, Kansas Bureau of Investigations, Topeka Police Department, El Paso Intelligence Center (EPIC), and training provided by the DEA relating to investigative techniques and conducting of narcotics and drug trafficking investigations. I have participated in and conducted investigations resulting in the arrests of individuals who received and distributed controlled substances, as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs.

3.    The information contained in this affidavit is known to your Affiant through personal direct knowledge, and/or through a review of official reports prepared by other law enforcement personnel. This affidavit is submitted in support of a forfeiture proceeding.

4.    On December 12, 2024, Kansas Highway Patrol Trooper James McCord conducted a traffic stop on a gray Kia Sportage for a traffic infraction on eastbound I-70 near mile marker 189 in Russell County, in the District of Kansas. The vehicle was driven by Shamariya LEWIS. There was one passenger in the vehicle identified as Jordan SMITH.

5.    Initially Trooper McCord observed the Kia travelling in the left lane at 77 mile per hour near mile marker 184.

6.    Trooper McCord turned through the median on the road and observed the Kia slow to 64 miles per hour but it remained in the left lane.

7.    The Kia pulled off at a rest area at mile marker 187 and Trooper McCord remained in the area.

8.    When the Kia rejoined the highway, Trooper McCord observed the Kia begin to pass a semi but during the pass, the Kia slowed to 67 miles per hour and the semi began to pull away from the Kia.

9.    Trooper McCord approached the vehicle and identified the driver as Shamariya LEWIS from Atlanta, Georgia. While at the window Trooper McCord observed the odor of marijuana coming from the interior of the vehicle.

10.    The Kia Sportage was rented on December 10, 2024 and was due back in Atlanta on December 12, 2024. While LEWIS was pulling up the rental agreement on her phone, Trooper McCord asked LEWIS about their travel plans. LEWIS advised that they had been in Reno to visit a friend for her birthday.

11.   Trooper McCord had LEWIS come back to his patrol car while he worked on the paperwork. While typing up the paperwork, Trooper McCord asked LEWIS about her travel to Reno. LEWIS indicated they had flown out there to celebrate her friend's birthday. However, LEWIS indicated her friend got into an argument with her boyfriend and they were not able to go out.

12.   LEWIS indicated that they were not going to be able to stay with their friend so LEWIS and SMITH decided to rent a vehicle and drive back. LEWIS indicated that they did have tickets to fly back to Atlanta on December 12, 2024 which cost $503. LEWIS indicated that the car rental was almost $1000 for a one-way rental.

13.   LEWIS told Trooper McCord that she worked in a warehouse and made $24 an hour and SMITH was a certified nursing assistant.

14.   Trooper McCord asked LEWIS about the odor of marijuana and she indicated that she last smoked a marijuana vape in Reno.

15.   Trooper McCord requested a canine be deployed around the vehicle and the canine gave a positive indication to the odor of narcotics coming from the vehicle.

16.   During a search of the vehicle Troopers located two bags on the backseat. One bag was a black Fisher Price backpack which contained two large bundle's of United States Currency and several loose $100 bills along with women's clothing. In one of the zippered pockets, officers located marijuana gleanings. The second black duffel bag contained one large bundle of United States currency and women's clothing.

17.   LEWIS and SMITH were transported to the Russell Kansas Department of Transportation office for questioning.

18.   SMITH claimed ownership of the black duffel bag with one bundle of currency. SMITH indicated that the bag contained approximately $25,000 in United States currency. SMITH further claimed they had approximately $70,000 between the two of them.

19.   When asked by Trooper McCord how they obtained the United States currency, SMITH indicated they did some stuff, and they got paid.

20.   The currency located in the Fisher Price backpack claimed by LEWIS which consisted of two large bundles and several loose $100 bills totaled approximately $103,100.00 in United States currency.

21.   The currency located in the black duffel bag claimed by SMITH which consisted of one large bundle totaled approximately $50,000.00 in United States currency.

22.   Trooper Carr responded to the Russell Kansas Department of Transportation office in order to conduct an interview of SMITH.

23.   While filling out the DEA Personal history sheet, SMITH repeatedly told TFO Carr "We did some strange for some change and that's it." SMITH also told TFO Carr the money does not involve drugs and continued to reference prostitution as the source of the money.

24.   When asked further about her statements and the United States currency, SMITH stated that it was a one-time thing and that she was embarrassed and did not want to talk about it. SMITH stated

it is not something she does regularly. SMITH also indicated that she was not working for anyone.

25.    After being read Miranda, TFO Carr questioned SMITH further who indicated it was what TFO Carr had been saying, which was prostitution. They met someone in Vegas the previous year who brought SMITH and LEWIS out to Nevada and paid them to have sex with him.

26.    TFO Carr then asked SMITH how much they were paid and she indicated she thinks she has "maybe 70 in her bag, maybe."

27.    SMITH refused to identify the guy who paid them to come out to Nevada.

28.    SMITH told TFO Carr that they had a flight to Reno and had planned all along to drive back.

29.    While TFO Carr was interviewing SMITH, Trooper McCord advised someone named "Carlos" called the Kansas Highway Patrol dispatch looking for his friend Jonathon and stated that Jonathon's phone was pinging at the Russel Kansas Department of Transportation office. This individual called several times attempting to get information on the status of SMITH and LEWIS.

30.    On December 13, 2024, TFO Carr spoke with the caller when he called back to ask about his sister. When TFO Carr asked the caller to identify himself, the caller hung up.

31.    TFO Carr seized three cell phones, two from SMITH and one from LEWIS.

32.    An exploitation of the cell phones indicated that this was not LEWIS' first trip. There were many text messages which indicated

narcotics distribution activity. Other text messages indicated prior

money pickups conducted by LEWIS. Additional text messages

communicated the pickup location for the "$150k" and transmitted

instructions for its pickup.

33.   Based upon the information set out above, Affiant has

probable cause to believe that the approximately $103,100.00 and

$50,000.00 seized by the Kansas Highway Patrol constitutes money or

other things of value furnished or intended to be furnished in

exchange for a controlled substance, or proceeds traceable to such

an exchange, or was used or intended to be used to facilitate one or

more violations of Title 21, U.S.C. § 841 et. seq. Accordingly, the

property is subject to forfeiture pursuant to Title 21, U.S.C. § 853

and 881.

_____

Scott Moses, TFO
DEA


Sworn to and subscribed before me this 26th day of June    2025.


LINETTE J. McCUNE
Notary Public · State of Kansas
My Appt. Expires 07-10-2026

_____
Notary Public

My Commission Expires: 07-10-2026